**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kaylee Earls,<br><br>            Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>            Defendant. | No. CV-15-08165-PCT-NVW<br><br>**ORDER** |

Plaintiff Kaylee Earls seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in November 1990 and applied for Supplemental Security Income benefits when she was 21 years old. She has at least a high school education and is able to communicate in English. When she was 12 years old, she had surgery for lumbar scoliosis, which caused nerve damage. She continues to have leg and back pain for which she takes pain medication. In 2013, she worked two days a week for about three hours a day handling mail for a medical facility. She was able to drive, help with

grocery shopping, do laundry, lift a gallon of milk, but not lift her two-year-old son who weighed 28 pounds. She drives three hours to visit her family, but has developed a leg cramp, which required her to stop and walk around for about an hour to relieve the cramp.

On May 31, 2012, Plaintiff applied for supplemental security income benefits, alleging disability beginning April 13, 2008. On December 13, 2013, she appeared with her attorney and testified at a video hearing before the ALJ. A vocational expert also testified. On January 30, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On August 31, 2015, Plaintiff sought review by this Court.

**II.    STANDARD OF REVIEW**

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 31, 2012, the protective application date. At step two, the ALJ found that Plaintiff has the following severe impairments: status post lumbar scoliosis reduction surgery and fusion (in 2003); degenerative disc disease; nerve damage; and leg pain. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she is limited to occasional postural activities such as climbing, balancing, stooping, kneeling, crouching and crawling; she is precluded from climbing ladders, ropes, or scaffolds; she is to avoid concentrated exposure to extreme cold; and, she is to avoid even moderate exposure to hazards, such as machinery or working at heights.

The ALJ further found that Plaintiff has no past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as bagger, cleaner, and ticket seller.

## IV. ANALYSIS

### A. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR96-7p. Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014. The ALJ must consider all of the evidence presented, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Second, the ALJ found Plaintiff's "statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."

Plaintiff testified that she is unable to work full-time because she has too much pain and cannot stay in a single position for very long, like working at an office desk.

She said her pain is located in her back and right leg and is constant. She also said that she gets shooting pains from her back down to her right knee, which causes her knee to give out.

The ALJ gave the following reasons for finding Plaintiff's subjective symptom testimony less than fully credible: (1) Plaintiff acknowledged being able to drive, do some household chores and grocery shopping, and work for three hours a day, two days a week. (2) The objective evidence showed only mild tenderness on palpitation of her back and full range of motion in all of her extremities. (3) Plaintiff's treatment during the relevant period has been routine and primarily limited to medication management. The ALJ specifically identified the testimony that he found to lack credibility and explained what evidence undermined it. The ALJ gave specific, clear, and convincing reasons for finding Plaintiff's testimony regarding the severity of her symptoms not fully credible.

### B. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

In deciding weight to give any medical opinion, the ALJ considers not only whether the source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinion of a specialist about medical issues related to his area of specialty

than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5). The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

### 2. Treating Pain Specialist Sarah Buenviaje-Smith, M.D.

On July 10, 2012, Dr. Buenviaje-Smith began treating Plaintiff for management of chronic low back and leg pain. She saw Plaintiff on August 7 and 21, 2012. On September 11, 2012, Dr. Buenviaje-Smith completed a Residual Functional Capacity Questionnaire and opined that Plaintiff can sit for 30 minutes at one time and stand/walk for 30 minutes at one time. She opined that in an 8-hour workday Plaintiff can sit for a total of one hour and stand/walk for a total of two hours. She further opined that Plaintiff would need to take 5-10 minute breaks every hour. Dr. Buenviaje-Smith said Plaintiff can frequently lift less than 10 pounds and occasionally lift up to 20 pounds. She estimated that Plaintiff would be absent from work 3-4 times a month as a result of her impairments or treatments. She also opined that Plaintiff is not physically capable of working an 8-hour day, 5 days a week, on a sustained basis.

The ALJ stated that he "considered, but ultimately gave very little weight to, the Residual Functional Capacity Questionnaire completed by Dr. Buenviaje-Smith" because (1) Dr. Buenviaje-Smith did not list the specific objective medical findings upon which she based her opinion, (2) the opinion was inconsistent with Plaintiff's admitted activities of daily living, (3) Dr. Buenviaje-Smith's treating relationship was of short duration, (4) Dr. Buenviaje-Smith's treatment consisted entirely of medication management, and (5) Dr. Buenviaje-Smith's opinion appears to have relied heavily on Plaintiff's subjective complaints without objective evidence. These are clear and convincing reasons,

supported by substantial evidence in the record, for giving Dr. Buenviaje-Smith's opinion little weight.

### 3. State Agency Medical Consultant D. Rose, M.D.

Dr. Rose reviewed Plaintiff's records at the reconsideration level and concluded she is capable of performing a limited range of light work. The ALJ gave great weight to Dr. Rose's opinion because State agency consultants are highly qualified physicians who are experts in Social Security disability programs, the governing regulations, and evaluation of medical issues in disability claims. The ALJ gave greater weight to Dr. Rose's opinion on reconsideration than to the opinion formed during the initial review, which found fewer limitations, because Dr. Rose was able to review more recent medical evidence.

Plaintiff contends that the ALJ erred by giving great weight to Dr. Rose's opinion because the opinion mentioned the symptoms in Plaintiff's right leg only once and these symptoms could affect her ability to walk or stand for six hours as opined by Dr. Rose and concluded by the ALJ. Dr. Rose commented that on August 9, 2012, the treating orthopedist noted Plaintiff complained of low back pain with radiation down her right leg and right leg weakness. Dr. Rose did not note that on July 10, 2012, Dr. Buenviaje-Smith found mild right lower extremity weakness and diminished right lower extremity deep tendon reflexes. Dr. Rose also did not note that on September 20, 2012, November 27, 2012, and December 13, 2012, Dr. Buenviaje-Smith found right leg pain within normal limits and no abnormal neurological findings. During examinations on October 30, 2012, and December 27, 2012, Dr. Buenviaje-Smith did not find right leg pain. These omissions do not show that Dr. Rose's opinion was not consistent with the overall medical record.

Plaintiff also contends that Dr. Rose did not provide sufficient explanation for her opinion to find that it was supported by substantial evidence. Dr. Rose cited to a lumbar CT from July 27, 2012, but did not state that the CT report said, "There is some atrophy of the lower back paraspinous musculature." Although Dr. Rose did not report every

- 8 -

detail described in the CT report's "Findings" section, Dr. Rose included everything reported in the CT report's "Impressions" section. Plaintiff contends that "some atrophy" indicates a limited activity level, which is consistent with Plaintiff's testimony and shows Dr. Rose apparently failed to consider the evidence of muscle atrophy. Mild atrophy may suggest that Plaintiff has not been actively using certain muscles, but Dr. Rose's failure to comment on mild atrophy does not show that Dr. Rose failed to consider it. Mild atrophy of lower back muscles alone does not indicate Plaintiff's functionality. Dr. Rose accurately summarized the CT results as showing severe scoliosis in Plaintiff's lower back, postoperative changes, and no significant bony spinal canal, neural foraminal stenosis, or acute fracture within the lumbar spine.

### 4. Records Prior to May 31, 2012

In the context of Plaintiff's credibility regarding the severity of her symptoms and limitations, the ALJ noted that some of the records are for treatment occurring prior to May 31, 2012, and therefore are of limited usefulness. The ALJ stated, "However, in order to view the record in the light most favorable to the claimant, the undersigned has read and considered the entire medical record prior to making a decision on this case." Contrary to Plaintiff's assertion, the ALJ did not "essentially ignore" these treatment records. Rather, the ALJ expressly found Plaintiff had severe impairments due to surgeries and nerve damage, but found treatment records before the relevant period to be of limited usefulness in assessing the severity of her current symptoms and limitations.

### C. The ALJ Did Not Err by Incomplete Questioning of the Vocational Expert.

It was not necessary for the ALJ to present to the vocational expert a hypothetical regarding an individual with limitations not supported by the medical evidence.

/ / /

/ / /

/ / /

1    IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 31st day of March, 2016.

                                                    _____
                                                              Neil V. Wake
                                                        United States District Judge